OPINION
{¶ 1} This appeal involves a dispute over the rights of adjacent property owners to "tap-in" or connect to a neighbor's lateral sewer line that leads to a main sewer line owned by the City of Trotwood.
 {¶ 2} Liberty Self-Stor, Ltd. ("Liberty"), owned and *Page 2 
operated a self-storage facility on the north side of Shiloh Springs Road in Trotwood. Defendants, Mark and Lori Porter ("The Porters"), Lillian and David Hoffman ("The Hoffmans"), and Miriam Friedman (collectively, "Defendants"), also own real property on the north side of Shiloh Springs Road.
 {¶ 3} In 1998, Liberty sought zoning approval from the City of Trotwood to expand its existing operations. Liberty presented a Planned Unit Development ("PUD") application to the Trotwood City Council. At the time Liberty sought zoning approval, Shiloh Springs Road was not serviced by Trotwood municipal sewer system.
 {¶ 4} Defendants voiced objections to Liberty's proposed plans for expansion. The Trotwood Planning and Zoning Administrator recommended approval of Liberty's PUD application if the concerns of the adjacent property owners were mitigated. Based on the expressed concerns of the adjacent property owners, the Trotwood Planning Commission rejected approval of Liberty's PUD application.
 {¶ 5} After speaking with a representative of Liberty, Defendants agreed to withdraw their objections to Liberty's proposed expansion plans. The parties disagree as to what Liberty promised in return for the Defendants' withdrawal of their objections. According to Liberty, the withdrawal of *Page 3 
Defendants' objections was given in return for Liberty's promise to submit modifications to the proposed plan, which included Liberty's construction of an extension to the city's sewer main along Shiloh Springs Road, so that connections to the line might be offered to other property owners along Shiloh Springs Road, that is, the Defendants. Liberty would then convey the lateral extension to Trotwood to serve as an extension of the city's municipal main. In return, Trotwood would enter into a protective agreement whereby Liberty could recoup its construction costs. According to Defendants, Liberty promised to allow Defendants to tap-in to the lateral sewer extension at no charge.
 {¶ 6} Defendants withdrew their objections and Liberty received zoning approval to expand its operations. Liberty subsequently obtained an easement from a third party that owned real property on the south side of Shiloh Springs Road. Liberty constructed the lateral sewer extension within this easement at a cost of $75,020.00. But Liberty and Trotwood failed to enter into a protection agreement and Liberty never conveyed the lateral extension to Trotwood.
 {¶ 7} Defendants applied for permits to connect with Liberty's sewer line. Trotwood issued the permits to the Porters and the Hoffmans, who then made connections to *Page 4 
Liberty's lateral extension, which ran to Trotwood's main sewer line. Friedman also made a connection to the sewer line, although it appears that Friedman was not issued a connection permit by Trotwood. Defendants then removed their existing sewage disposal systems.
 {¶ 8} In December 2002, Liberty commenced an action against Defendants, asserting ejectment, trespass, and conversion, and requesting mesne profits, and against Trotwood, seeking mandamus relief for an involuntary taking. Subsequently, Liberty moved for partial summary judgment on its ejectment claim, which the trial court granted on August 30, 2005. But the trial court vacated that order on September 8, 2005, because Liberty no longer had standing to maintain the action against Defendants as a result of Liberty's conveyance of its real property to U-Store-It, L.P. ("U-Store-It").
 {¶ 9} On September 19, 2005, U-Store-It filed a motion for leave to join as a party plaintiff and for partial summary judgment in ejectment on the same grounds previously asserted by Liberty. The trial court granted U-Store-It's motion for partial summary judgment in ejectment on July 11, 2006. U-Store-It voluntarily dismissed its remaining claims pursuant to Civ. R. 41(A)(1). U-Store-It then moved for judgment on *Page 5 
the pleadings and for entry of judgment, which the trial court granted on August 10, 2006. Defendants filed a timely notice of appeal.
FIRST ASSIGNMENT OF ERROR
 {¶ 10} "THE LOWER COURT ERRED, AS A MATTER OF LAW, IN SUSTAINING THE MOTION OF PLAINTIFF-APPELLEE, U-STORE-IT, FOR SUMMARY JUDGMENT."
SECOND ASSIGNMENT OF ERROR
 {¶ 11} "THE LOWER COURT ERRED, AS A MATTER OF LAW, IN ISSUING A MANDATORY INJUNCTION DIRECTING THE DEFENDANT-APPELLANTS TO DISCONNECT FROM A SEWER EASEMENT AS A REMEDY UNDER THE EJECTMENT ACTION BROUGHT BY PLAINTIFF-APPELLEE."
THIRD ASSIGNMENT OF ERROR
 {¶ 12} "THE LOWER COURT ABUSED ITS DISCRETION BY ISSUING A MANDATORY INJUNCTION WITHOUT EVIDENCE OR RULING THAT SUCH INJUNCTIVE RELIEF WAS NECESSARY TO PROTECT A CLEAR RIGHT FROM IRREPARABLE INJURY, WHERE ANY REMEDY AT LAW IS INADEQUATE."
 {¶ 13} The first three assignments of error are interrelated and will be addressed together. Our review of an award of summary judgment is de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105,671 N.E.2d 241. We apply the same standard as the trial court, viewing the facts in the case in a light most favorable to the non-moving party and *Page 6 
resolving any doubt in favor of the non-moving party. Viock v.Stowe-Woodward Co. (1983), 13 Ohio App.3d 7, 12, 467 N.E.2d 1378. Appellate review of a judgment on the pleadings similarly is de novo, which requires an independent determination of whether judgment has properly been entered as a matter of law. Senu-Oke v. Board of Educationof Dayton City School District, Montgomery App. No. 20967,2005-Ohio-5239, _11 (citation omitted).
 {¶ 14} The Defendants argued that U-Store-It agreed to allow them to tap into its sewer line. U-Store-It argued that any such agreement, if one was made, is unenforceable unless it was reduced to writing, and signed by the party to be bound, because an agreement to convey an interest in land is otherwise unenforceable per the Statute of Frauds.
 {¶ 15} The trial court found that the tap-ins by Defendants into U-Store-It's lateral sewer extension are permanent in nature and, therefore, are licenses coupled with an interest, which are irrevocable and are treated as easements. An easement is subject to the requirements of the Statute of Frauds, R.C. 1335.04. It appears uncontested that no signed writing memorialized the terms of the oral agreement between Defendants and Liberty.
 {¶ 16} The trial court found that none of the exceptions to *Page 7 
the Statute of Frauds applied to the oral agreement between Liberty and Defendants. Therefore, the trial court granted summary judgment to U-Store-It on the ejectment claim. The trial court further ordered Defendants "to disconnect and remove the Encroaching Connections from Plaintiff's sewer lines and restore the lands and improvements of the Plaintiff to the condition in which they were found immediately prior to said encroachment within sixty days of the date of this Order. Failure by a Defendant to disconnect shall entitle Plaintiff to perform the work and collect from said Defendant the cost of completing the work."
 {¶ 17} Defendants argue that the trial court erred in granting summary judgment and ordering disconnection of the tap-ins, because U-Store-It did not plead and prove all of the elements necessary to an ejectment action. We agree.
 {¶ 18} The trial court found that the interest Defendants obtained when they connected to U-Store-It's sewer line is in the nature of an easement. We agree, for the reasons the trial court stated, and we also agree that conveyance of such an interest is required, and that the conveyance is subject to the Statute of Frauds. However, the threshold question in an ejectment action is not the nature of the adverse party's interest but the nature of the interest owned by the plaintiff *Page 8 
on which it asserts a right to ejectment.
 {¶ 19} The common law action in ejectment is codified in R.C. 5303.03, which provides: "In an action for the recovery of real property, it is sufficient if the plaintiff states in his petition that he has a legal estate therein and is entitled to the possession thereof, describing it with such certainty as to identify the property, and that the defendant unlawfully keeps him out of the possession. It is not necessary to state how the plaintiff's estate or ownership is derived."
 {¶ 20} Ejectment is the proper remedy against one wrongfully in possession of real property. Turnbull v. City of Xenia (1946),80 Ohio App. 389, 392, 69 N.E.2d 378. Ejectment is available where the plaintiff has a legal title and is entitled to the possession of the real property but is unlawfully kept out of the possession by the defendant. Id.
 {¶ 21} "As a rule, property sought to be recovered in an action for the recovery of real property must be a corporeal hereditament, the action not ordinarily being maintainable for the recovery of an incorporeal hereditament which is incapable of physical delivery, such as an easement or servitude generally, a franchise, or a mere license, privilege, or right to use." 37 Ohio Jurisprudence 3d (2002) 16, Ejectment, *Page 9 
Section 4, citing 25 American Jurisprudence 2d (2004) 626, Ejectment, Section 3. See also Gilberton Coal Co. v. Schuster (1961), 403 Pa. 226,228, 169 A.2d 44.
 {¶ 22} In its complaint, U-Store-It alleged that Defendants, without U-Store-It's permission, tapped into the lateral sewer extension built by its predecessor, Liberty, within the easement Liberty had acquired from a third party that owned real property on the south side of Shiloh Springs Road. Neither assertion alleges or proves that U-Store-It had a possessory interest in the land under which Defendants tapped into the lateral extension. Rather, it appears undisputed that the lateral extension U-Store-It owns is located on the real property on the south side of Shiloh Springs Road that is owned by the third party, within the easement U-Store-It owns. Further, U-Store-It did not allege or prove that the Defendants' tap-ins obstructed Liberty's use of its easement on the third party's real property.
 {¶ 23} Not all occurrences on an easement entitle the easement holder to relief. Lake Ashley Development, Inc. v. Innovative Contractors Building Services, Inc. (Dec. 29, 1994), Cuyahoga App. No. 66539. "[T]he property of the owner of an easement is taken from him not necessarily when the adverse party occupies the land, but only when he prevents or *Page 10 
interferes with the owner's use of the easement." Rueckel v. TexasEastern (1981), 3 Ohio App.3d 153, 160, 444 N.E.2d 77 (citation omitted). For example, "[i]n the case of sewer lines, an interference may occur when the additional use by the adverse party causes the drainage system to be forced to operate beyond its capacity." LakeAshley Development.
 {¶ 24} U-Store-It failed to plead and prove that the easement Liberty had obtained from a third party created a possessory interest in U-Store-It sufficient to support an action in ejectment. Further, U-Store-It did not plead and prove that Defendants' tap-ins interfered with or prevented U-Store-It's use of its easement. Therefore, the trial court erred in granting U-Store-It's motion for summary judgment on the ejectment claim and ordering Defendants to disconnect from the lateral extension.
 {¶ 25} Defendants' first three assignments of error are sustained.
FOURTH ASSIGNMENT OF ERROR
 {¶ 26} "THE LOWER COURT ERRED, AS A MATTER OF LAW, IN RULING THAT THE STATUTE OF FRAUDS IS FATAL TO DEFENDANT-APPELLANTS' AFFIRMATIVE DEFENSES."
FIFTH ASSIGNMENT OF ERROR
 {¶ 27} "THE LOWER COURT ERRED, BY OVERRULING DEFENDANT- *Page 11 
APPELLANTS' MOTION TO STRIKE PORTIONS OF THE AFFIDAVIT ATTACHED TO PLAINTIFF-APPELLEE'S MOTION FOR SUMMARY JUDGMENT."
 {¶ 28} The resolution of the first three assignments of error renders it unnecessary to resolve the fourth and fifth assignments of error. Therefore, the fourth and fifth assignments of error are overruled as moot.
 {¶ 29} The judgment of the trial court is reversed. The cause is remanded for further proceedings consistent with this opinion.
 BROGAN, J. And FAIN, J., concur. *Page 1