[Cite as *Northwest Ohio Properties, Ltd. v. Lucas Cty.*, 2018-Ohio-4239.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Northwest Ohio Properties, Ltd.

Court of Appeals No. L-17-1190

Appellant/Cross-Appellee

Trial Court No. CI0201602638

v.

County of Lucas, et al.

**DECISION AND JUDGMENT**

Appellees/Cross-Appellant

Decided: October 19, 2018

* * * * *

Marvin A. Robon and Zachary J. Murry, for appellant/cross-appellee.

Julia R. Bates, Lucas County Prosecuting Attorney, John A. Borell and Kevin A. Pituch, Assistant Prosecuting Attorneys, for appellees Lucas County.

John J. McHugh, III, for appellee/cross-appellant Gulfstream Development, Ltd.

* * * * *

**SINGER, J.**

{¶ 1} Appellant, Northwest Ohio Properties, Ltd., and intervening

defendant/cross-appellant Gulfstream Development, Ltd. ("Gulfstream"), appeal the

June 26, 2017 judgment of the Lucas County Court of Common Pleas. For the following reasons, we affirm the trial court's judgment.

{¶ 2} Appellant sets forth two assignments of error:

1. The Trial Court committed reversible error by entering summary judgment in favor of the Defendant-Appellee Lucas County and Intervening Defendant/Cross-Appellant Gulfstream Development, Ltd.

2. The Trial Court committed reversible error by denying Plaintiff's Cross-Motion for Partial Summary Judgment when the undisputed material facts of the case established that Plaintiff was entitled to summary judgment on its ejectment claim and where Plaintiff's ejectment claim is not subject to Ohio's political subdivision tort immunity statutory scheme.

Gulfstream sets forth two cross-assignments of error:

1. The trial court erred prejudicially in granting the Civ.R. 15(B) pretrial motion to amend the pleadings to conform to the evidence without affording the intervening defendant any opportunity to oppose the motion.

2. The trial court erred prejudicially in determining that the intervening defendant was responsible for the payment of any and all tap fees to be prospectively charged by Lucas County to plaintiff for its connection to the sanitary sewer line.

## Facts

{¶ 3} Appellant owns over 60 acres of land at the corner of Crissey Road and Central Avenue in Lucas County, Ohio. Near appellant's land, Watermark Properties, Ltd. V ("Watermark"), owned property which was being developed into Waterside Sylvania, a residential subdivision ("the subdivision"). Ankney Enterprises, Inc. ("AE") acted as the manager of Watermark, and Duane Ankney was the managing member of AE.

{¶ 4} Watermark's property did not have access to sanitary sewer service, so sewer lines needed to be constructed. It was proposed that one of these sewer lines, a force main, would be installed underground on ten feet of appellant's property. To that end, on September 1, 2006, Marvin Robon, managing member of appellant, sent a letter to "Duane Ankney, of Watermark," which provided in pertinent part:

My understanding is that we can tap the force main, so I have asked Colin Gil to install two (2) reducers which we will pay for * * *.

My understanding is a construction easement is needed to install the line, so we agree to give you permission and Colin Gil permission to go on the property for such installation provided there is no charge to us for tapping into the force main.

Please sign a copy of this letter and return it to me.

{¶ 5} On the bottom of the letter, under the heading, "Acceptance and Agreement," it is stated:

3.

"Duane Ankney on behalf of the entity that will own the force main hereby agrees and consents to the foregoing agreement." Ankney signed the letter on September 11, 2006.

{¶ 6} Colin Gil, president of Snowden Construction Company, Inc., contracted with Ankney to install the force main across appellant's property. Construction of the sewer project commenced, with oversight by the office of the Lucas County Sanitary Engineer ("Engineer"), and a sewer system including the force main was installed connecting the subdivision to a newly constructed pumping station.

{¶ 7} Robon, in an October 5, 2007 letter, advised the Engineer of appellant's agreement with Ankney. Robon also informed the Engineer that "[m]y understanding is that this force main and pumping station are going to be dedicated to the county and we want you to be aware that we expect a free tap in the future."

{¶ 8} The Engineer, in his October 10, 2007 letter in response to Robon, initially denied Robon's demand of "free taps," as no connections directly to the force main had been approved by the Engineer's office. Later, however, the Engineer agreed to allow two taps into the force main, in accordance with the September 2006 agreement, once appellant determined how its property would be developed.

{¶ 9} In 2009, Huntington National Bank ("HBN") took a cognovit judgment against Watermark, and sought to foreclose on a mortgage granted to Watermark. Watermark was placed into receivership.

4.

**{¶ 10}** In 2012, HBN sold and assigned its judgment against Watermark to Waterside Sylvania, LLC ("WSLLC").  WSLLC then sought to foreclose on Watermark's mortgage.  In April 2013, all matters affecting title to the Watermark property were settled.  Thus, WSLLC became the new owner of the subdivision property, and Gulfstream became the new developer of the subdivision, with Ankney as the managing member of Gulfstream.

**{¶ 11}** Since the completion of the sewer project in 2007, the Lucas County defendants have operated and maintained the sewer system, but have not accepted ownership of it.  Moreover, appellant has never tapped into the force main on its property.  However, the subdivision utilizes the sanitary sewer and the Lucas County defendants collect sewage fees from residents of the subdivision.

### Lawsuit

**{¶ 12}** On May 3, 2016, appellant filed its complaint against the County of the Lucas, Lucas County Board of County Commissioners, Lucas County Sanitary Engineer, Lucas County Engineer, Lucas County Plan Commission, Lucas County Recorder, The Hartford Financial Services Group, Inc., and Huntington Bancshares, Inc.  Appellant set forth six claims in the complaint relating to the force main sewer line across its property: trespass; injunction; unjust enrichment/compensation; tortious interference with business relations; conspiracy; and declaratory judgment on bonds.

**{¶ 13}** On August 10, 2016, appellant voluntarily dismissed Huntington Bancshares, Inc. as a defendant.

{¶ 14} On August 12, 2016, appellant filed an amended complaint which incorporated all of the causes of action in its original complaint and added/substituted HBN as a defendant, and added three causes of action relating to the force main on its property: violation of constitutional rights; ejectment; and breach of contract.

{¶ 15} The Lucas County defendants filed a motion for judgment on the pleadings moving to dismiss all nine of the claims alleged against them.

{¶ 16} On November 3, 2016, Gulfstream filed a motion to intervene as a defendant; the motion was granted. On November 4, 2016, Gulfstream filed its answer to appellant's amended complaint.

{¶ 17} On November 14, 2016, appellant voluntarily dismissed The Hartford Financial Services Group, Inc., and HBN as defendants, and dismissed the conspiracy and declaratory judgment on bonds claims.

{¶ 18} On March 17, 2017, appellant filed a motion for partial summary judgment on its ejectment claim.

{¶ 19} On March 24, 2017, the trial court issued a judgment granting, in part, the Lucas County defendants' motion for judgment on the pleadings. The court found the Lucas County defendants were immune from suit with respect to the tortious interference with business relations claim, as well as any damage claim associated with the trespassing and ejectment claims. In addition, the court dismissed the claim for injunction, and dismissed all claims against the County of Lucas.

6.

**{¶ 20}** On April 21, 2017, the Lucas County defendants filed a motion for summary judgment with respect to appellant's remaining claims of trespass, unjust enrichment, violation of constitutional rights, ejectment and breach of contract.

**{¶ 21}** On May 19, 2017, appellant voluntarily dismissed its unjust enrichment claim, violation of constitutional rights claim and breach of contract claim.

**{¶ 22}** On June 21, 2017, appellant filed a motion to amend pleadings to conform to the evidence. Appellant noted "Gulfstream has asserted an interest in the sanitary line and has joined the claims of the Lucas County Defendants that an easement by estoppel exists across [appellant's] property." Appellant sought to amend the pleadings to "impute [appellant's] claims against the Lucas County Defendants to Gulfstream as well." And, "any order to ejectment and/or writ of possession issued by the Court regarding the sanitary sewer line should apply with equal force to both the Lucas County Defendants and Gulfstream." Appellant's motion to amend pleadings was granted.

**{¶ 23}** On June 26, 2017, the trial court issued a judgment granting the Lucas County defendants' motion for summary judgment with respect to appellant's trespass and ejectment claims, and denying appellant's motion for partial summary judgment on its ejectment claim.

**{¶ 24}** The court found appellant "entered into an enforceable agreement with Watermark to grant Watermark an easement for the purpose of installing a sewer line on its property and that agreement has not been breached * * * [and] the terms [of the agreement] are clear and unambiguous." The court also stated "[t]he term 'no charge' [in

the agreement] clearly means that plaintiff will not be charged for tapping into the force main * * *. The court reads this provision to mean that any charges were to be paid by Watermark, and now must be paid by Gulfstream * * *." The court further found appellant "has failed to establish that defendants do not have a legal right to have the sewer line on the property."

{¶ 25} The court, in order to fulfill the terms of the contract, ordered appellant "to specifically perform its contracted duty to provide an easement for the sewer." The court observed "Gulfstream has raised the defense that plaintiff 'entered into an agreement permitting and consenting to the construction of the sanitary sewer across its property, which agreement constitutes * * * a *de facto* easement.'" This defense was treated as a counterclaim, pursuant to Civ.R. 8(C), as the issue had been briefed by the parties, and justice so required.

{¶ 26} Appellant appealed and Gulfstream filed a cross-appeal.

## Analysis

### Appellant's First Assignment of Error

{¶ 27} At the outset we note that appellant's only remaining causes of action are for trespass, where appellant pursues removal or severance of the force main, and ejectment, where appellant seeks a writ of possession and removal of the force main.

{¶ 28} Appellant contends the trial court erred by entering summary judgment for the Lucas County defendants and Gulfstream. Appellant argues "there can be no dispute that neither Defendant Gulfstream nor Lucas County have any express easement on, or

8.

right to use, Plaintiff's property." Appellant also asserts the September 2006 letter agreement cannot act as a conveyance of easement rights as it did not conform to the requirements of R.C. 5301.01. Appellant further contends it was denied the benefit of the bargain in 2006, so no easement or right to use or possess its property was ever conveyed.

<u>Summary Judgment Standard</u>

{¶ 29} We review a trial court's summary judgment decision on a de novo basis. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Accordingly, we undertake our own independent examination of the record and make our own decision as to whether the moving parties are entitled to summary judgment. *Dupler v. Mansfield Journal*, 64 Ohio St.2d 116, 119-120, 413 N.E.2d 1187 (1980).

{¶ 30} Pursuant to Civ.R. 56, the moving party bears the initial burden of informing the trial court of the basis for the motion and presenting proper evidence in support thereof. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). If the movant satisfies its initial burden, the burden then shifts to the nonmovant to present specific facts demonstrating the existence of a genuine issue. *Id.* The nonmovant cannot avoid summary judgment by submitting an unsupported, self-serving affidavit. *Bank of New York v. Barclay*, 10th Dist. Franklin No. 03AP-844, 2004-Ohio-1217, ¶ 13.

{¶ 31} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact * * * show that there is no genuine issue as to

9.

any material fact and that the moving party is entitled to judgment as a matter of law." Civ.R. 56(C).

Lucas County Defendants

**{¶ 32}** In the trespass claim set forth in the complaint, appellant alleged "Lucas County should have ensured that all easements and other permissions necessary for the sanitary sewer construction at issue were obtained and perfected before allowing it to be utilized, and [Lucas County] failed in its statutory obligations * * *." Appellant further alleged the defendants "have intentionally, or at least negligently, interred with [appellant's] property rights and are committing regular and continuing trespasses upon [appellant's] real property by pumping sewage at least twice weekly through [appellant's] property."

**{¶ 33}** In appellant's ejectment claim, appellant alleged the defendants "are in possession of the subject real property by virtue of their--at minimum--tacit acceptance, operation, and maintenance of the sewer lines traversing [appellant's] property." Appellant further alleged the "defendants' conduct has acted to unlawfully deprive [appellant] of his right to possess its property, including specifically the area effected by the sanitary sewer line(s) that is the subject of this lawsuit."

**{¶ 34}** In their motion for summary judgment, Lucas County defendants contend in order for appellant "[t]o establish its trespass and/or ejectment claims, there must be proof that one or more of the Lucas County defendants, 'without authority or privilege, physically invaded or unlawfully entered its property.'" Lucas County defendants assert

"[t]he undisputed facts * * * demonstrate that there is an express agreement for an easement specifically for the installation of the sewer line * * * and that, at a minimum, an easement by estoppel exists regarding the construction and use of the sewer line * * * so that, to the extent that the Lucas County defendants have entered [appellant's] property, they have had permission to do so."

{¶ 35} Lucas County defendants rely on the September 2006 letter agreement between appellant and Ankney for an easement for the sewer line on appellant's property, and maintain they have entered appellant's property pursuant to this easement. Lucas County defendants also submit that all parties have proceeded under appellant's representations that an easement existed. Lucas County defendants observe appellant sent the Engineer a letter "informing him of the consent it had given the developer for an easement on its property for the sewer line in question." Thus, appellant recognized that a sewer line was being constructed on its property, and acknowledged the agreement with Ankney for an easement. Lucas County defendants note the Engineer will allow appellant to have two taps into the force main after appellant determines how it will develop its property.

Trespass

{¶ 36} "'A common-law tort in trespass upon real property occurs when a person, without authority or privilege, physically invades or unlawfully enters the private premises of another whereby damages directly ensue * * *.'" (Citation omitted.) *Apel v. Katz*, 83 Ohio St.3d 11, 19, 697 N.E.2d 600 (1998). "[A] cause of action in trespass will

not lie when the purported trespasser holds an easement to the property on which he or she is purportedly trespassing." *Bayes v. Toledo Edison Co.*, 6th Dist. Lucas Nos. L-03-1177, L-03-1194, 2004-Ohio-5752, ¶ 68.

{¶ 37} An easement is an interest in the land of another, which entitles the easement holder to limited use of that land. *Id.* An express easement must be part of a deed or lease or other conveyance and must be recorded in conformity with R.C. 5301.01. *Schmiehausen v. Zimmerman*, 6th Dist. Ottawa No. OT-03-027, 2004-Ohio-3148, ¶ 20. "An easement by estoppel may be found when an owner of property misleads or causes another in any way to change the other's position to his or her prejudice." *Id.* at ¶ 21. "'Where an owner of land, without objection, permits another to expend money in reliance upon a supposed easement, when in justice and equity the former ought to have disclaimed his conflicting rights, he is estopped to deny the easement.'" (Citation omitted.) *Id.*

{¶ 38} Here, our de novo review of the record shows there is no evidence of an express easement between appellant and any party with respect to the force main. However, the evidence in the record does support a finding that an easement by estoppel exists.

{¶ 39} The record reveals it is undisputed that appellant and Ankney entered into an agreement in September 2006, where appellant acknowledged an easement was needed to install the force main and Ankney was granted permission to go on appellant's property to install the force main so long as appellant could tap into the force main at no

12.

cost. Ankney proceeded to have the force main installed on appellant's property, without objection from appellant, and at no cost to appellant. The force main has been in use since 2007, and has been operated and maintained by the Lucas County defendants.

{¶ 40} While appellant asserts the agreement was breached because Ankney and his contractor, Gill, knew at the time the force main was installed on appellant's property that Lucas County would not allow any taps into the force main, there is no evidence in the record to support this assertion, save for Robon's self-serving, uncorroborated statements which are not sufficient to demonstrate a material issue of fact precluding summary judgment. In fact, the evidence does show that appellant relied on the validity of the agreement, as Robon advised the Engineer of the agreement with Ankney, and informed the Engineer that "[m]y understanding is that this force main and pumping station are going to be dedicated to the county and we want you to be aware that we expect a free tap in the future." While the Engineer initially balked at Robon's demand, the Engineer has agreed to allow two taps into the force main once appellant has determined how it will develop its property.

{¶ 41} Appellant also argues the agreement was breached because it was not provided with two taps when the force main was installed "which served as the basis for the September 1, 2006 Letter Agreement." However, upon review, we find there is no time limit or time frame set forth in the agreement for appellant to tap the force main. Therefore, this is not evidence that the agreement was breached.

13.

{¶ 42} Based upon the foregoing evidence and the record as a whole, we find the September 2006 agreement is valid, has not been breached and is enforceable. We further find an easement by estoppel exists, in favor of the Lucas County defendants, who have operated and maintained the force main, and who changed their position regarding taps into the force main and have allowed two taps for appellant. Thus, the Lucas County defendants have had permission to use and maintain the force main on appellant's property and have committed no trespass. Accordingly, the trial court properly found the Lucas County defendants were entitled to judgment on appellant's trespass claim.

Ejectment

{¶ 43} An action in ejectment is the proper remedy against one who is wrongfully in possession of real property. *Turnbull v. City of Xenia*, 80 Ohio App. 389, 392, 69 N.E.2d 378 (2d Dist.1946). R.C. 5303.03, which codifies the common law action in ejectment, states in pertinent part:

> In an action for the recovery of real property, it is sufficient if the plaintiff states in his petition that he has a legal estate therein and is entitled to the possession thereof * * * and that the defendant unlawfully keeps him out of the possession.

{¶ 44} Here, for the reasons set forth above, we find the Lucas County defendants have committed no trespass on appellant's property. Therefore, we find the Lucas County defendants are not wrongfully in possession of appellant's property or unlawfully

14.

keeping appellant out of possession.  Accordingly, the trial court properly found the Lucas County defendants were entitled to judgment on appellant's ejectment claim.

### Gulfstream

{¶ 45} Although appellant argues the trial court entered summary judgment in favor of Gulfstream, the court did not do so.  Rather, the court treated Gulfstream's defense, that the 2006 letter agreement constituted a de facto easement, as a counterclaim pursuant to Civ.R. 8, and ordered appellant "to specifically perform its contracted duty to provide an easement for the sewer" to Gulfstream to fulfill the terms of the agreement.

### Civ.R. 8

{¶ 46} Civ.R. 8(C) provides "[w]hen a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court, if justice so requires, shall treat the pleading as if there had been a proper designation."

### Specific Performance

{¶ 47} "Specific performance of contracts is a matter resting in the sound discretion of the court, not arbitrary, but controlled by principles of equity, on full consideration of the circumstances of each particular case." *Spengler v. Sonnenberg*, 88 Ohio St. 192, 203, 102 N.E. 737 (1913).

{¶ 48} A reviewing court will not disturb a lower court's action in granting or denying specific performance unless it appears from the record there has been an abuse of discretion. *Sandusky Properties v. Aveni*, 15 Ohio St.3d 273, 275, 473 N.E.2d 798 (1984).  An abuse of discretion is "more than an error of law or judgment; it implies that

15.

the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 49} The following factors are generally prerequisites to the award of specific performance:

> "'The contract must be concluded, certain, unambiguous, mutual, and upon a valuable consideration; it must be perfectly fair in all its parts; free from any misrepresentation or misapprehension, fraud or mistake, imposition or surprise; not an unconscionable or hard bargain; and its performance not oppressive upon the defendant; and finally, it must be capable of specific execution through a decree of the court.'" (Citation omitted.) Fine v. U.S. Erie Islands Co., 6th Dist. Ottawa No. OT-07-048, 2009-Ohio-1531, ¶ 30.

{¶ 50} Here, the record shows appellant and Ankney entered into an agreement in 2006, where appellant acknowledged an easement was needed to install the force main, and appellant granted Ankney permission to go on its property for the installation, provided there was no charge for appellant to tap into the force main. At the time the agreement was entered, Ankney was AE's managing member and AE acted as the manager of Watermark, the owner of the subdivision property. Currently, WSLLC is the owner of the subdivision property, Gulfstream is the subdivision's developer and Ankney is the managing member of Gulfstream. Gulfstream has repeatedly represented that it will honor the commitment made by Ankney.

16.

{¶ 51} Upon review, the record demonstrates, in accordance with the agreement, Ankney was permitted to and did go on appellant's property to have the force main installed, and that appellant can tap into the force main at no charge after it determines how it will develop its property. However, appellant has refused to grant Gulfstream an easement.

{¶ 52} The trial court found the 2006 agreement was enforceable and its terms were clear and unambiguous. The court ordered appellant to specifically perform the agreement and provide Gulfstream with an easement.

{¶ 53} Upon review, we find the agreement is valid and its terms certain, clear and fair. We also find Ankney performed under the agreement, but appellant did not. Thus, we find the trial court did not abuse its discretion by ordering appellant to specifically perform its obligation under the agreement and provide Gulfstream with an easement.

{¶ 54} In light of the foregoing, appellant's first assignment of error is not well-taken.

**Appellant's Second Assignment of Error**

{¶ 55} Appellant argued it was entitled to summary judgment against the Lucas County defendants and Gulfstream on its ejectment claim. For the reasons set forth above, we find neither Gulfstream nor the Lucas County defendants have committed a trespass on appellant's property. Therefore, neither Gulfstream nor the Lucas County defendants are wrongfully in possession of appellant's property or unlawfully keeping appellant out of possession. Accordingly, the trial court properly found appellant's

17.

ejectment claim fails. In light of the foregoing, appellant's second assignment of error is not well-taken.

### Gulfstream's First Cross-Assignments of Error

{¶ 56} Gulfstream argues the trial court erred in granting appellant's Civ.R. 15(B) pretrial motion to amend the pleadings to conform to the evidence without affording Gulfstream the opportunity to oppose the motion.

{¶ 57} Civ.R. 15(B) provides in relevant part:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.  Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment.

{¶ 58} Civ.R 6(C) states in relevant part:

Unless otherwise provided by these rules, by local rule, or by order of the court, a response to a written motion, other than a motion that may be heard ex parte, shall be served within fourteen days after service of the motion.

**{¶ 59}** Likewise, Loc.R. 5.04(D) of the Court of Common Pleas of Lucas County, General Division, provides: "An opposing party may serve and file a memorandum in opposition to any motion. The filing shall be made within 14 days after service."

**{¶ 60}** The premise underlying Civ.R. 6(C) and the local rule is that the party opposing the motion must have sufficient notice and the opportunity to respond in order to avoid undue prejudice. *See Ohio Metal Servs., LLC v. All-In Metals, LLC*, 9th Dist. Summit Nos. 26240, 26625, 2013-Ohio-2174, ¶ 26.

**{¶ 61}** Here, the record shows that on June 21, 2017, appellant filed its motion to amend pleadings to reflect that "if the court were to determine that Gulfstream possessed an ownership interest in the sanitary line - that [appellant's] ejectment claim should apply with equal force to Gulfstream * * * as the successor in interest to the original developer * * *." And, "[t]o date Gulfstream has not asserted that it is the proper owner of the sanitary line * * * [h]owever, Gulfstream has asserted an interest in the sanitary line * * * [claiming] an easement by estoppel exists."

**{¶ 62}** On June 23, 2017, the trial court granted appellant's motion to amend "to add * * * Gulfstream * * * as an additional defendant to which plaintiff's ejectment claim applies."

**{¶ 63}** Upon review, we find the trial court ruled on appellant's motion two days after the motion was filed, which clearly did not allow Gulfstream the time allowed by rule to file an opposition to the motion. However, Gulfstream had already intervened as a defendant in the action and defended itself, including filing an answer to appellant's

complaint and denying appellant's claims. Thus, although Gulfstream was not given the opportunity to object to appellant's motion to amend, we find that Gulfstream was not prejudiced. Accordingly, Gulfstream's first cross-assignment of error is not well-taken.

**Gulfstream's Second Cross-Assignments of Error**

{¶ 64} Gulfstream contends the trial court erred in issuing an advisory determination that Gulfstream would, in the future, be responsible for the payment of any and all tap fees to be prospectively charged by Lucas County for appellant's connection to the sanitary sewer line. Gulfstream argues "[i]t has not been alleged and has never been admitted that [WSLLC] has any ownership interest in or control of [Gulfstream], or that [Gulfstream] has any ownership interest in or control over [WSLLC]. Gulfstream further contends it and WSLLC are "two entities [which] are factually and legally distinct * * * [and] [n]either one is a predecessor or successor to the other."

{¶ 65} The trial court, in its opinion, found the terms of the 2006 agreement between appellant and Ankney were clear and unambiguous, and the term "'no charge' clearly means [appellant] will not be charged for tapping into the force main" and "any charges were to be paid by Watermark, and now must be paid by Gulfstream."

{¶ 66} The standard of review for contract issues is whether the trial court erred as a matter of law. *Continental W. Condo. Unit Owners Assn. v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502, 660 N.E.2d 431 (1996). Thus, we must decide whether the trial court's judgment "is based on an erroneous standard or a misconstruction of the law." *Id.*

20.

{¶ 67} Construction of a written agreement is a matter of law for the court. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph one of the syllabus. A contract must be viewed as a whole, and the intent of the parties is reflected by the language used. *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 509 N.E.2d 411 (1987), paragraph one of the syllabus. The words in a contract are given their plain and ordinary meaning unless "manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander* at paragraph two of the syllabus. In addition, the court must give effect to the words used in the contract, and not delete or insert words. *Cleveland Elec. Illum. Co. v. Cleveland*, 37 Ohio St.3d 50, 53, 524 N.E.2d 441 (1988).

{¶ 68} As set forth above, we found the agreement is valid and its terms clear. As such, the agreement must be enforced and not interpreted. The agreement provides that Ankney was granted permission by appellant to install the force main on appellant's property, provided there was no charge for appellant to tap into the force main. While argument was made that "no charge" meant the developer's fees will be waived and any charges due to Lucas County will still be due by appellant, that language was not used in the agreement, and cannot be read into the agreement now. Thus, the trial court did not err when it found "'no charge' clearly means [appellant] will not be charged for tapping into the force main."

{¶ 69} Moreover, the trial court did not err in finding that "any charges were to be paid by Watermark, and now must be paid by Gulfstream." The record shows Ankney

entered into the agreement when he was the managing member of AE, which acted as the manager of Watermark, the subdivision property owner. Now, Ankney is the managing member of Gulfstream, the developer of the subdivision, and Gulfstream has consistently confirmed that it will honor the commitment made by Ankney in the agreement. Since it has been determined, as a matter of law, that no charge to tap means no charge to appellant whatsoever, we find the trial court did not err by ordering Gulfstream to pay any and all charges for appellant to tap into the force main. Accordingly, Gulfstream's second cross-assignment of error is not well-taken.

{¶ 70} The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant and Gulfstream are ordered to split the costs of this appeal, pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                          _____
                                                        JUDGE
Thomas J. Osowik, J.

James D. Jensen, J.                       _____
CONCUR.                                               JUDGE

                                          _____
                                                        JUDGE

| This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/. |